994 P.2d 636

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James G. ANDREWS, Defendant–Appellant.**

**No. 25226.**

Court of Appeals of Idaho.

Feb. 15, 2000.

**894**

Ronaldo A. Coulter, State Appellate Public Defender; Molly J. Huskey, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger II, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

James G. Andrews was convicted of one count of rape, I.C. § 18–6101, after a jury trial. The district court imposed a unified sentence of thirty-two years, with twelve years fixed. This sentence included an indeterminate ten-year enhancement for Andrews' use of a firearm during the commission of the rape, I.C. § 19–2520. Andrews appeals, claiming that the district court abused its discretion by imposing an excessive sentence because it failed to consider his young age [1] and his status as a first-time offender.

■ Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho

141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405, *quoting State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■ Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

Under I.C. § 18–6104, the maximum penalty for rape is life imprisonment. Andrews' minimum period of confinement is twelve

---

1. Andrews was twenty-nine years old at the time of sentencing.

years. Accordingly, Andrews must demonstrate that this twelve-year period was an abuse of the district court's sentencing discretion.

Andrews was on duty as a Lemhi County deputy sheriff on the evening of January 23, 1998, and the early morning hours of January 24. His eventual victim, T.K., was out with her friends at a local tavern. T.K. left the tavern at 1:20 a.m. and observed Andrews' patrol vehicle. T.K. got into her car, drove away from the tavern and was pulled over by Andrews after traveling a short distance. Andrews told T.K. that he pulled her over because she had not scraped the snow and ice from her rear window. Andrews asked T.K. if she had been drinking that evening and she admitted that she had a few beers. Andrews told T.K. that he was not going to give her a citation, but would follow her home to ensure that she arrived safely.

When they reached T.K.'s home, Andrews waited until T.K. exited her vehicle and then ordered her to get into his patrol car. Andrews drove to a secluded and dark location while asking T.K. personal questions. Andrews parked his vehicle, got out and started to undress. He told T.K. that she was going to perform oral sex on him, to which she responded that she was not. Andrews pulled out his police-issued handgun as he undressed, pointed it at T.K. and said "Yes, you will." Andrews got back into the police car, putting his gun in the back seat, and forced T.K. to perform oral sex on him. After a few minutes, he told T.K. that he was going to vaginally penetrate her and proceeded to undress her against her will. Andrews engaged in forcible intercourse with T.K. for a short period of time. Andrews then forced T.K. to resume performing oral sex on him until he ejaculated and then forced her to swallow. Andrews eventually drove T.K. home and mercifully released her without further harm.

Andrews initially denied that he had engaged in any sexual acts with T.K. He later admitted that the acts occurred, but claimed that they were consensual—he has maintained this claim throughout. Andrews has shown no remorse for what he perpetrated on T.K. At his sentencing, Andrews expressed regret only for the harm he caused to "the court system, the community, [and] ... the law enforcement community in general," but not for his rape victim.

At sentencing, the district court was aware of Andrews' age and his lack of a prior criminal record. However, the court, referring to the presentence investigation report, noted that Andrews was in complete denial of his violent actions, continued to insist that the contact was consensual, and was a high risk to reoffend. In addition, the district court was aware that the psychosexual evaluator expressed concern about the possibility of other victims of rape in Andrews' past, as well as in the future. Andrews committed what is possibly the most heinous act of deceit and abuse of community trust conceivable by a peace officer. Andrews lured a trusting member of the community into his patrol car, in his capacity as a person sworn to serve and protect the public, and used his police weapon to facilitate rape. Andrews' presence in society compromises the safety of the general public. The district court appropriately focused on the protection of society in removing Andrews from the community for a period of time no less than twelve years.

Based on the complete record before us, particularly the calculated, demeaning, and violent nature of Andrews' offense, we hold that the sentence imposed was reasonable and necessary to effectuate the protection of society. "The primary consideration [at sentencing] is and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end." *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). Andrews' unified sentence of thirty-two years, with twelve years fixed, is therefore affirmed.

Chief Judge PERRY, and Judge LANSING concur.