861 P.2d 67

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jaimi Dean CHARBONEAU, Defendant–Appellant.**

**Nos. 19635, 19973.**

Supreme Court of Idaho, Twin Falls, March 1993 Term.

Oct. 22, 1993.

Manweiler, Bevis and Cameron, Boise, and M. Lynn Dunlap, Twin Falls, for defendant-appellant. Howard I. Manweiler, Boise, argued.

Larry EchoHawk, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., argued, Boise, for plaintiff-respondent.

ORDER WITHDRAWING OPINION OF SEPTEMBER 1, 1993 AND REMITTITUR OF SEPTEMBER 23, 1993 AND SUBSTITUTING THE OPINION OF OCTOBER 22, 1993 AND REMITTITUR

An opinion was filed September 1, 1993, 124 Idaho 217, 858 P.2d 756, by this Court and the Remittitur issued September 23, 1993, advising the District Court that the opinion issued September 1, 1993, had become final and that the District Court should comply with the directive of that opinion, if any action was required. Subsequently, the Court withdrew its opinion issued September 1, 1993, and issued a substituted opinion October 22, 1993. Therefore, good cause appearing,

IT HEREBY IS ORDERED that the opinion issued September 1, 1993, and Remittitur issued September 23, 1993, be and they hereby are, WITHDRAWN.

IT FURTHER IS ORDERED that the opinion issued October 22, 1993, shall be SUBSTITUTED in lieu of the prior opinion of this Court.

IT FURTHER IS ORDERED that the opinion of this Court issued October 22, 1993, be, and hereby is, FINAL and the District Court shall comply with the directive of the substituted opinion issued October 22, 1993, if any action is required.

**1993 OPINION NO. 101, FILED SEPTEMBER 1, 1993, 124 Idaho 217, 858 P.2d 756, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.**

McDEVITT, Chief Justice.

The sole issue before this Court is whether the trial court abused its discretion in sentencing Jaimi Dean Charboneau to a fixed life sentence for the murder of Marilyn Arbaugh. On review of the sentence we conclude that the district court abided by the proper sentencing standards, and accordingly, affirm the district court.

### I.

Charboneau was convicted of first-degree murder and was sentenced to death. This Court on appeal upheld the conviction but vacated the death sentence and remanded for reconsideration of the sentence. *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299, *cert. denied* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989), and 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989).[1] This Court vacated the sentence because: (1) the district court at the sentencing hearing improperly considered a "victim impact statement" that was inadmissible hearsay at the sentencing hearing,[2] (2) there was insufficient evidence in the record to support the trial court's finding that the victim was not fatally wounded by the first set of gunshots and could have been saved given necessary medical treatment (the court based the death sentence in part on the belief that Charboneau eschewed the opportunity to cease the deadly assault and instead inflicted the fatal wound), and (3) the court failed to weigh all of the mitigating circumstances against each of the statutory ag-

---

1. The details attendant to the murder are set out in our previous opinion, above cited, and hence are not repeated.

2. The United States Supreme Court held two years after *Charboneau* that there is no *per se* Eighth Amendment bar to the admissibility of victim impact statements. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

gravating circumstances as required by I.C. § 19–2515(c).

Upon the remand, the State did not seek the death penalty. The district court, after conducting a full hearing on the remand sentenced Charboneau to a fixed life sentence.

## II.

■ It is true that, as Charboneau asserts, a fundamental requirement in the proper exercise of sentencing discretion is reasonableness. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982); *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967). However, as stated more recently in *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991), when we review the reasonableness of a sentence, "we are exercising our authority as an appellate court to determine whether the trial court abused its discretion." 120 Idaho at 143, 814 P.2d at 403. In order to determine whether the trial court has abused its discretion our inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether the trial court acted within the outer bounds of that discretion and consistently with applicable legal standards, and (3) whether the trial court's decision was founded on and guided by an exercise of judicial reasoning. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Specifically addressing the applicable abuse of discretion standard of sentencing review, we have stated that:

> [w]here reasonable minds might differ as to the sufficiency of time of confinement, the discretion vested in the sentencing court will be respected. *Holmes v. State*, 104 Idaho 312, 658 P.2d 983 (1983). Our task is one of deciding whether a clear abuse of discretion has been affirmatively shown and the question is whether the sentence is unreasonable upon the facts of the case. To establish that the sentence imposed was improper, the defendant must show in light of the governing criteria, [that the] sentence was excessive under any reasonable view of the facts.

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405 (*quoting State v. Small*, 107 Idaho 504, 505, 690 P.2d 1336, 1337 (1984)). The governing criteria referred to in the above quote was set out in *State v. Wolfe;* therein we stated the four objectives of sentencing are: (1) the protection of society, (2) the deterrence of crime both generally and specifically, (3) the possibility of rehabilitation, and (4) punishment or retribution for wrong doing. *State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978).

Charboneau challenges the sentence imposed on two grounds. First, he argues that the district court abused its discretion because it failed to fully consider each of the objectives of sentencing and therefore its decision was not reached by the exercise of reason. Second, he argues that the court did not act consistently with the governing criteria because the fixed life sentence is longer than necessary to achieve the objectives of sentencing and therefore unreasonable. He asks us to vacate the sentence and remand for the imposition of a sentence with the possibility of parole. We affirm the sentence as imposed for the reasons expressed below.

1. *The District Court properly considered the Wolfe sentencing objectives.*

■ Appellant first argues that the district court abused its discretion because its oral ruling addressed only two of the four *Wolfe* factors, retribution and deterrence; overlooked were the two goals of rehabilitation and the protection of society. Our review of the record discloses that the district court did in fact identify and address all four of the *Wolfe* objectives. Stating the obvious, the court first noted that society needs to be protected from people who are capable of committing murder. The court next addressed rehabilitation, noting that it was concerned about the testimony of appellant's witness, Dr. Richard V. Smith, a psychologist. Dr. Smith testified that appellant's rehabilitation, though possible, would not occur until he forthrightly admitted the truth about the murder, but, added that appellant had not yet done so in the seven years since the murder. Follow-

ing a discussion of specific deterrence, the court found that appellant, if ever released from prison, constituted a danger to society. As to general deterrence, the court noted that a life sentence would "send a message to others in this community and this State" that taking the life of another results in grave consequences.

In addressing the question of a proper penalty, the court stated that appellant deserved to be severely punished due to the serious nature of the crime. The court further noted that a life sentence would not be unduly harsh given that the legislature has authorized death as the only alternative. The court's sentencing remarks concluded on the note that "all four of these sentencing objectives feather together into the sentence to be given by the Court, with the primary consideration being the good order and protection of society."

In sum, the court identified and considered the applicable criteria at the sentencing hearing. It follows therefore that Appellant's claimed error in that regard is not supported by the record.

2. *In light of the Wolfe sentencing objectives, the sentence is reasonable under the facts of the case.*

■ Appellant relies heavily upon a case where the Idaho Court of Appeals held that a "sentence of confinement longer than is necessary to achieve the goals of sentencing is unreasonable." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 780 (Ct.App. 1982). The above passage was quoted in this Court's *Broadhead* opinion, 120 Idaho at 145, 814 P.2d at 404, but it was not specifically adopted. More appropriate is the holding which we did adopt from *Toohill:* that in order to establish that the sentence imposed is unreasonable the defendant must show in light of the governing criteria that the sentence is excessive under any reasonable view of the facts. *Toohill*, 103 Idaho at 568, 650 P.2d at 780.

■ Appellant focuses his argument on the rehabilitation goal of sentencing. He contends that a life sentence without possibility of parole is longer than is necessary because he is amenable to rehabilitation. While the appellant points to the evidence in the record that he is capable of being rehabilitated (at least after he confronts the truth about the crime and accepts responsibility for it), his possibility of rehabilitation, standing alone, is not enough to meet his burden of showing unreasonableness under the facts of his case.

> Rehabilitation is not the controlling consideration in the administration of criminal justice....
>
> The primary consideration is ... the good order and protection of society. All other factors are, and must be, subservient to that end. Important as are the humanitarian considerations affecting the accused ... and the importance to society of rehabilitation itself, such considerations cannot be allowed to control or defeat punishment, where other factors are ignored or subordinated to the detriment of society.

*State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956); *see also State v. Kern*, 119 Idaho 295, 297, 805 P.2d 501, 503 (Ct. App.1991).

### III.

The sentence imposed by the district court is affirmed.

JOHNSON and TROUT, JJ., and WOODLAND, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

On April 4, 1989, the Court issued its first opinion in this case. We affirmed the first degree murder conviction, but vacated the death sentence and remanded for resentencing.

Full development of the attendant facts and circumstances is available in the reported case, 116 Idaho 129, 132–34, 774 P.2d 299, 302–04 (1989). Highly unusual was Charboneau's selection of defense counsel, concerning which I wrote at 116 Idaho at 162, 774 P.2d at 332, laying out the highly singular fact that defense counsel predicated the defense which he would present upon the results of a seance which was conducted by a spiritualist. Defense

counsel wholly succumbed to relying entirely on the hypothesis that Charboneau was not the real culprit, but the real culprit was a daughter of the deceased victim. Based on that belief, said defense counsel forewent making any of the ordinary preparations for presenting a defense. Even more damaging to Charboneau was defense counsel allowing him to be interrogated by prosecuting authorities.

The interested reader will become more fully informed by reading all of the *Charboneau* opinions. My purpose for so suggesting is to further my view that the actions of the defense counsel were not just inimicable to the best interests of Charboneau, but actually deprived Charboneau of a fair trial.

For that reason I was unable to sanction the death sentence and am therefore presently equally unable to see him imprisoned for the remainder of his life without receiving the benefit of a new trial, one which could not but be substantially more fair than the one to which he was submitted by the attorney who supposedly represented and defended him. In regard to that disaster, I am reminded of and fortified by a news item recently observed in a local newspaper. It was to the effect that a convicted murderer who had been sentenced to life imprisonment had been recently paroled. A full report of the facts of that affair, which was the same sort of factual background as *Charboneau,* is readily available in 62 Idaho 8, 107 P.2d 854 (1940). To my mind, for one defendant to be released on parole requires that others equally entitled be treated evenly. To which must be added, the 62 Idaho defendant at all times had the benefit of competent counsel, whereas the trial of Charboneau was facially farcical from its inception. It is my firm belief that the trial in *State v. Charboneau* should have been aborted abruptly the very minute that defense counsel disclosed his reliance on the outcome of a seance.

It was within the province of the district court to declare a mistrial. To have done so would not have unduly delayed a second trial at which Charboneau would be repre-

sented by competent counsel well versed in defending a defendant charged with first degree murder. What *did* occur, however, was a classic tragedy. It is equally true, and fully conceded, that hindsight is just that and nothing more. Undoubtedly the trial court was caught short when defense counsel presented his highly unusual theory of a defense which was not a defense. The district judge who presided at the trial is an extremely capable and fair-minded jurist; it can only be surmised that as is so with most trial court judges, he was not inclined to interfere with the defense counsel's mystical theory for defending a first degree murder charge.